IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :  CRIMINAL NO. 09-216-02 |
| MICHAEL GRANT | : |

**GOVERNMENT'S  SENTENCING  MEMORANDUM**

The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Seth Weber, Assistant United States Attorney, hereby submits this memorandum to provide the court with the government's sentencing recommendation to assist the court in imposing a reasonable sentence upon the defendant.

**I.      Background**

Defendant Michael Grant is charged in indictment no. 09-216-02, filed on April 1, 2009, with one count of conspiracy to commit armed robbery, armed bank robbery, and using and carrying a firearm during and in relation to a crime of violence, in violation of 18. U.S.C. § § 371, 2113(d), and 924 (c).

The charges against the defendant result from his participation in a conspiracy to commit armed bank robbery and actual gunpoint armed bank robbery on September 26, 2008 at the KNBT Bank, located inside the Fellowship Manor Nursing Home, at 3000 Fellowship Drive, Whitehall, Pennsylvania.  This is located in Lehigh County in the Eastern District of Pennsylvania.

On January 21, 2010, the defendant pled guilty to all counts charged against him in the indictment, pursuant to a written guilty plea agreement. The government and defendant stipulated and agreed that the base offense level for the offenses of conviction is 23 under §§ 2B3.1(a), (b)(1) and (b)(7)(B) of the advisory Sentencing Guidelines, based upon the amount of stolen bank proceeds of approximately $24,000.

The government agrees that the defendant is entitled to a 3 point reduction for acceptance of responsibility under Section 3E1.1(a) and (b) of the Sentencing Guidelines. Thus, there is an Adjusted Base Offense Level of 20. The government calculated a criminal history category of II or III, depending on the final determination of the number of convictions.

The government has the right to make whatever recommendation it deems appropriate at the time of sentencing.

The government agrees that the Probation Office has correctly calculated the advisory sentencing guidelines range at total offense level 31, criminal history category VI resulting from the defendant's status as a Career Offender, for an advisory sentencing guidelines range of 272 to 319 months imprisonment.

Government and Defendant's Joint Recommended Sentence

Based upon the government and defendant calculations of the advisory sentencing guidelines at the time of the guilty plea, and the defendant's reliance on these calculations in deciding to plead guilty, the government and defendant are jointly recommending to the court that the guidelines to be applied in this case is a total offense level 20, criminal history category III, for a sentencing range of 41 to 51 months, with a jointly recommended sentence of 51 months imprisonment, plus the consecutive 7 years imprisonment for the carrying

of the firearm count, resulting in a total sentence of 135 months (11 years and 3 months).

## II.   MAXIMUM SENTENCE

### A.   Maximum statutory sentence

Count 1 - conspiracy to commit armed bank robbery, 18 U.S.C. § 371

Up to 5 years imprisonment, no mandatory minimum term of imprisonment, a $250,000 fine, up to 3 years supervised release, and a $100 special victims/witness assessment.

Count 2 - armed bank robbery, 18 U.S.C. § 2113(d)

Up to 25 years imprisonment, no mandatory minimum term of imprisonment, a $250,000 fine, up to 5 years supervised release and a $100 special victim/witness assessment.

Count 3 - using and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)

Up to Life imprisonment, a mandatory minimum term of imprisonment of 7 years to be served consecutive to any other sentence imposed, a $250,000 fine, up to 5 years supervised release and a $100 special victim/witness assessment.

**TOTAL MAXIMUM SENTENCE** - Up to Life imprisonment, a mandatory minimum term of 7 years imprisonment, a $750,000 fine, 5 years supervised release and a $300 special assessment.

## III.   SENTENCING ANALYSIS AND LEGAL DISCUSSION

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in United States v. Booker, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the

Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing United States v. King, 454 F.3d 187, 194, 196 (3d Cir. 2006); United States v. Cooper, 437 F.3d 324, 329-30 (3d Cir. 2006)). See also United States v. Smalley, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the Gunter directive is consistent with later Supreme Court decisions). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. United States v. Grier, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. United States v. Langford, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." Cooper, 437 F.3d at 329. See also Rita v. United States, 127 S. Ct. 2456, 2468 (2007) ("The

sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); United States v. Schweitzer, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a high end guideline sentence in this case.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 128 S. Ct. 586, 596 (2007). As will be discussed later, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the

offense. 18 U.S.C. § 3553(a).[1]

The Supreme Court has stated: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough, 128 S. Ct. at 574 (quoting Rita v. United States, 127 S. Ct. 2456, 2465 (2007)).

In Rita, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, Rita, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, **both** the sentencing judge and the Sentencing Commission will have reached the **same** conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." Id. at 2463 (emphasis in original).

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of Booker that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, **helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary."** Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the Booker Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" Cooper, 437 F.3d at 331 (quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 128 S. Ct. at 596 n.6. See also United States v. Langford, 2008 WL 466158, *4-7 (3d Cir. Feb. 22, 2008) (explaining at length the continued importance of the guidelines).

The Supreme Court's recent decisions in Gall and Kimbrough do not change this analysis. As is evident from the quotations above, these cases reaffirmed the importance of consideration of the guidelines by district courts, along with all other 3553(a) considerations. Gall was actually focused on the scope of appellate review: the Supreme Court held that appellate courts must review sentences deferentially, under an abuse of discretion standard, whether such sentences are within or outside the advisory ranges. While this ruling may result in more frequent affirmance of district court decisions, it does not relieve the district courts of their primary responsibility, as explained in the Supreme Court decisions, to properly assess and consider all sentencing factors, including the advisory guideline range, and to give careful consideration to that range.

Thus, the Gall Court instructed:

> It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.

Gall, 128 S. Ct. at 594.[2]

Likewise, the Court's decision in Kimbrough, issued on the same day as Gall, emphasized the district courts' responsibility to consider the Sentencing Guidelines as a bulwark against disparate sentencing. In Kimbrough, the Court held that the guidelines for crack cocaine offenses are advisory, and that a sentencing court in such a case may consider, among other factors, the criticism stated by the Sentencing Commission and others of those particular guidelines. Responding to an assertion that such case-by-case assessment of the propriety of the guidelines may lead to significant disparity in sentencing, the Court emphasized the district courts' responsibility to avoid that result:

> Section 3553(a)(6) directs *district courts* to consider the need to avoid unwarranted disparities — along with other § 3553(a) factors — when imposing sentences. See *Gall, ante* . . . .

Kimbrough, 128 S. Ct. at 574 (emphasis in original). Needless to say, fidelity to the guidelines is the only available means of carrying out this mandate.

---

[2] The Court added: "If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. at 597.

The government's recommendation of a high end guideline sentence is based in part on the fact that such a sentence properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," Kimbrough v. United States, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" id. at 574 (quoting United States v. Pruitt, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

For all of these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, our point is that a district court must consider the guideline range, see § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders.

IV. **GOVERNMENT'S SENTENCING RECOMMENDATION**

  Accordingly, the government respectfully recommends a sentence at the high end of the government calculations of the advisory sentencing guidelines range of 51 months imprisonment, plus the consecutive 84 months (7 years) for the firearm charge, for a total sentence of imprisonment of 135 months, together with restitution to KNBT Bank of $22,467.

         Respectfully submitted,

         ZANE DAVID MEMEGER
         United States Attorney


         /s/ Seth Weber
         SETH  WEBER
         Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing government's sentencing memorandum will be served upon defense counsel by electronic case filing and by e- mail, as follows:

        Paul J. Hetznecker, Esquire
        Phetznecker@aol.com


        Counsel for Defendant Michael Grant



        /s/ Seth Weber
        SETH WEBER
        Assistant United States Attorney


DATE: May 12, 2010